IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN BAR ASSOCIATION
321 North Clark Street
Chicago, IL 60654

        Plaintiff,

  v.

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580

        Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW Plaintiff American Bar Association (the "ABA"), by and through its attorneys Proskauer Rose LLP, who files this Complaint for Declaratory and Injunctive Relief against Defendant Federal Trade Commission (the "FTC" or "Commission"), alleging as follows:

### NATURE OF THE ACTION

1.    This action is brought by the ABA on behalf of its nearly 400,000 members to declare unlawful and set aside the FTC's application of its regulation, commonly known as the "Red Flags Rule," to lawyers engaged in the practice of law, each of whom is already subject to strict confidentiality and privacy requirements set forth in the statutes, rules of professional conduct, and other disciplinary rules of the States in which the members are licensed to practice law.

2.    In direct conflict with the law of this circuit, *see ABA v. FTC*, 430 F.3d 457 (D.C. Cir. 2005), the FTC is again attempting to exceed its statutory authority by now seeking to

enforce its Red Flags Rule, a rule designed to prevent identity theft, against the legal profession. The FTC seeks to take this action in the absence of an express statutory mandate, by arbitrarily and capriciously including lawyers engaged in the practice of law as "creditors" under its Red Flags Rule, in arrogation of powers that Congress has not given to it. Timely judicial relief is required to stop the FTC's unlawful enforcement of the Red Flags Rule against the legal profession, which is scheduled to begin on November 1, 2009.

## PARTIES

3. Plaintiff ABA is the world's largest voluntary professional association with nearly 400,000 members. A not-for-profit corporation organized under the laws of Illinois, the ABA's principal place of business is 321 North Clark Street, Chicago, Illinois 60654. The ABA's membership spans all 50 States and other jurisdictions, and includes lawyers in private law firms, corporations, nonprofit organizations, government agencies, and prosecutorial and public defender offices, as well as legislators, law professors, and law students. The ABA's mission is "[t]o serve equally our members, our profession and the public by defending liberty and delivering justice as the national representative of the legal profession." ABA Mission and Association Goals (Aug. 2008).

4. Among the ABA's goals are to: preserve the independence of the legal profession and the judiciary; promote improvements in the American system of justice; increase public understanding of, and respect for, the law, the legal process, and the role of the legal profession; achieve the highest standards of professionalism, competence and ethical conduct for lawyers; and advance the rule of law worldwide. To assist the legal profession in achieving and maintaining high standards for professionalism and ethical conduct, the ABA promulgates Model Rules of Professional Conduct, which require lawyers to maintain the confidentiality and privacy of

information disclosed by and to clients. Most States base their lawyer confidentiality and privacy rules on the ABA's Model Rules.[1]

5. The ABA has standing to pursue this action on behalf of its members under the three-element test enunciated in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) the ABA's members would otherwise have standing to sue in their own right, (2) the interests at stake in this case are germane to the ABA's organizational purposes, and (3) neither the claims asserted nor the relief requested requires the participation of the ABA's individual members.

6. Defendant FTC is an independent agency of the United States. It is one of several entities Congress authorized to enforce, and promulgate regulations pursuant to, the Fair Credit Reporting Act ("FCRA") and the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"). The FTC has taken the position that it may enforce the Red Flags Rule, promulgated pursuant to the FACTA, against lawyers engaged in the practice of law on the theory that lawyers qualify as "creditors" pursuant to the FCRA and the FACTA. The FTC's business address is 600 Pennsylvania Avenue, NW, Washington, District of Columbia 20580.

7. The Federal Government's sovereign immunity does not preclude this suit because this is "an action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702.

---

[1] The ABA's Model Rules of Professional Conduct are the basis for the lawyer ethics codes in every State except California. California's rules are currently under review, in response to developments in the field and to the Report and Recommendation of the ABA's Ethics 2000 Commission.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action and the parties thereto pursuant to 28 U.S.C. § 1331.

9. The relief requested is authorized by 5 U.S.C. § 702 (Administrative Procedure Act); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 2201 (Declaratory Judgment Act); and 28 U.S.C. § 2202 (further relief). The ABA has a right to bring this action pursuant to the judicial-review provision of the Administrative Procedure Act, 5 U.S.C. § 702, and the implied nonstatutory review procedure provided by 28 U.S.C. § 1331.

10. Venue lies in this district under 28 U.S.C. § 1391(e).

## BACKGROUND AND FACTUAL ALLEGATIONS

### The Fair and Accurate Credit Transactions Act of 2003

11. Congress enacted the Fair and Accurate Credit Transactions Act of 2003 ("FACTA") in late 2003. *See* Pub. L. No. 108-159, 117 Stat. 1952 (codified at 15 U.S.C. §§ 1681-1681x (Supp. I 2007)).

12. The FACTA codified a number of measures intended to improve the accuracy of credit transactions and to curb identity theft, including entitling each American to one free annual credit report and enabling consumers to place fraud alerts in their credit files.

13. Section 114 of the FACTA, 15 U.S.C. § 1681m, directs the FTC and other agencies to issue guidelines regarding identity theft. It states, in relevant part:

(e) RED FLAG GUIDELINES AND REGULATIONS REQUIRED.

   (1) GUIDELINES. The Federal banking agencies, the National Credit Union Administration, and the [FTC] shall jointly, with respect to the entities that are subject to their respective enforcement authority under section 621 [15 U.S.C. § 1681s]—

      (A) establish and maintain guidelines for use by each financial institution and each creditor regarding identity theft with respect to account

4

>>holders at, or customers of, such entities, and update such guidelines as often as necessary; [and]
>>
>>(B) prescribe regulations requiring each financial institution and each creditor to establish reasonable policies and procedures for implementing the guidelines established pursuant to subparagraph (A), to identify possible risks to account holders or customers or to the safety and soundness of the institution or customers[.]
>>
>>. . .
>>
>>(2) CRITERIA.
>>
>>(A) IN GENERAL. In developing the guidelines required by paragraph (1)(A), the agencies described in paragraph (1) shall identify patterns, practices, and specific forms of activity that indicate the possible existence of identity theft. . . .
>
>FACTA § 114(e) (codified at 15 U.S.C. § 1681m(e)).

14. The FTC, among other agencies, is empowered to enforce the rules it promulgates pursuant to the FACTA. 15 U.S.C. § 1681s.

15. The FTC thus is empowered to create and enforce identity theft guidelines against "creditor[s]," among others. The FACTA adopts the definitions of "credit" and "creditor" contained in the Equal Credit Opportunity Act ("ECOA"). 15 U.S.C. § 1681a(r)(5).

16. "Credit" is defined in the ECOA as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

17. "Creditor" is defined in the ECOA as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).

**The Proposed Red Flags Rule**

18.     On July 18, 2006, the FTC and several other executive agencies jointly issued a proposed rule to begin implementation of the FACTA. *See* Identity Theft Red Flags and Address Discrepancies Under the Fair and Accurate Credit Transactions Act of 2003, 71 Fed. Reg. 40,786 (July 18, 2006) (the "Proposed Red Flags Rule").

19.     Among other things, the Proposed Red Flags Rule required creditors to create written identity theft prevention programs tailored specifically to a particular creditor's business.

20.     The Proposed Red Flags Rule provided no indication that the FTC or its sister agencies believed lawyers engaged in the practice of law fell within the definition of "creditor."

**The Final Red Flags Rule**

21.     On November 9, 2007, the FTC and several other executive agencies jointly issued a final rule to implement the FACTA. *See* Identity Theft Red Flags and Address Discrepancies Under the Fair and Accurate Credit Transactions Act of 2003, 72 Fed. Reg. 63,718 (Nov. 9, 2007) (the "Final Red Flags Rule").

22.     In parts relevant to this litigation, the Final Red Flags Rule, like the Proposed Red Flags Rule, required creditors to develop written identity theft prevention programs, stating:

> **§ 681.2  Duties regarding the detection, prevention, and mitigation of identity theft.**
>
> (a) *Scope*.  This section applies to financial institutions and creditors that are subject to administrative enforcement of the FCRA by the Federal Trade Commission pursuant to 15 U.S.C. 1681s(a)(1).
>
> (b) *Definitions*.  For purposes of this section, and appendix A, the following definitions apply:
>
> > (1) *Account* means a continuing relationship established by a person with a financial institution or creditor to obtain a product or service for personal, family, household or business purposes.  Account includes:

      (i) An extension of credit, such as the purchase of property or services involving a deferred payment; and

      (ii) A deposit account.

(2) The term *board of directors* includes:

      (i) In the case of a branch or agency of a foreign bank, the managing official in charge of the branch or agency; and

      (ii) In the case of any other creditor that does not have a board of directors, a designated employee at the level of senior management.

(3) *Covered account* means:

      (i) An account that a financial institution or creditor offers or maintains, primarily for personal, family, or household purposes, that involves or is designed to permit multiple payments or transactions, such as a credit card account, mortgage loan, automobile loan, margin account, cell phone account, utility account, checking account, or savings account; and

      (ii) Any other account that the financial institution or creditor offers or maintains for which there is a reasonably foreseeable risk to customers or to the safety and soundness of the financial institution or creditor from identity theft, including financial, operational, compliance, reputation, or litigation risks.

(4) *Credit* has the same meaning as in 15 U.S.C. 1681a(r)(5).

(5) *Creditor* has the same meaning as in 15 U.S.C. 1681a(r)(5), and includes lenders such as banks, finance companies, automobile dealers, mortgage brokers, utility companies, and telecommunications companies.

(6) *Customer* means a person that has a covered account with a financial institution or creditor.

(7) *Financial institution* has the same meaning as in 15 U.S.C. 1681a(t).

(8) *Identity theft* has the same meaning as in 16 CFR 603.2(a).

(9) *Red Flag* means a pattern, practice, or specific activity that indicates the possible existence of identity theft.

(10) *Service provider* means a person that provides a service directly to the financial institution or creditor.

(c) *Periodic Identification of Covered Accounts.* Each financial institution or creditor must periodically determine whether it offers or maintains covered accounts. As a part of this determination, a financial institution or creditor must conduct a risk assessment to determine whether it offers or maintains covered accounts described in paragraph (b)(3)(ii) of this section, taking into consideration:

(1) The methods it provides to open its accounts;

(2) The methods it provides to access its accounts; and

(3) Its previous experiences with identity theft.

(d) *Establishment of an Identity Theft Prevention Program.*—(1) *Program requirement.* Each financial institution or creditor that offers or maintains one or more covered accounts must develop and implement a written Identity Theft Prevention Program (Program) that is designed to detect, prevent, and mitigate identity theft in connection with the opening of a covered account or any existing covered account. The Program must be appropriate to the size and complexity of the financial institution or creditor and the nature and scope of its activities.

(2) *Elements of the Program.* The Program must include reasonable policies and procedures to:

(i) Identify relevant Red Flags for the covered accounts that the financial institution or creditor offers or maintains, and incorporate those Red Flags into its Program;

(ii) Detect Red Flags that have been incorporated into the Program of the financial institution or creditor;

(iii) Respond appropriately to any Red Flags that are detected pursuant to paragraph (d)(2)(ii) of this section to prevent and mitigate identity theft; and

(iv) Ensure the Program (including the Red Flags determined to be relevant) is updated periodically, to reflect changes in risks to customers and to the safety and soundness of the financial institution or creditor from identity theft.

(e) *Administration of the Program.* Each financial institution or creditor that is required to implement a Program must provide for the continued administration of the Program and must:

(1) Obtain approval of the initial written Program from either its board of directors or an appropriate committee of the board of directors;

>   (2) Involve the board of directors, an appropriate committee thereof, or a designated employee at the level of senior management in the oversight, development, implementation and administration of the Program;
>
>   (3) Train staff, as necessary, to effectively implement the Program; and
>
>   (4) Exercise appropriate and effective oversight of service provider arrangements.
>
>   (f) *Guidelines*.  Each financial institution or creditor that is required to implement a Program must consider the guidelines in appendix A of this part and include in its Program those guidelines that are appropriate.

Final Red Flags Rule, 72 Fed. Reg. at 63,772 (codified at 16 C.F.R. § 681.2 (2009)).

23. The Final Red Flags Rule provided no indication that the FTC or its sister agencies believed lawyers engaged in the practice of law fell within the definition of "creditor."

24. Likewise, the FTC's public releases regarding the Final Red Flags Rule did not mention lawyers. For example, a June 2008 FTC Business Alert did not list lawyers as among those covered, stating:

>   **Who must comply with the Red Flags Rules?**
>
>   The Red Flags Rules apply to "financial institutions" and "creditors" with "covered accounts."
>
>   . . .
>
>   A creditor is any entity that regularly extends, renews, or continues credit; any entity that regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who is involved in the decision to extend, renew, or continue credit.  Accepting credit cards as a form of payment does not in and of itself make an entity a creditor.  Creditors include finance companies, automobile dealers, mortgage brokers, utility companies, and telecommunications companies.  Where non-profit and government entities defer payment for goods or services, they, too, are to be considered creditors.  Most creditors, except for those regulated by the Federal bank regulatory agencies and the [National Credit Union Administration], come under the jurisdiction of the FTC.

FTC Business Alert, New 'Red Flag' Requirements for Financial Institutions and Creditors Will Help Fight Identity Theft (June 2008).

25. The Final Red Flags Rule had an effective date of January 1, 2008, and a "mandatory compliance date" of November 1, 2008. Final Red Flags Rule, 72 Fed. Reg. at 63,718.

### The FTC's Original Enforcement Policy

26. On October 22, 2008, the FTC issued a press release informing the general public that it was suspending enforcement of the Red Flags Rule until May 1, 2009, in order to "give creditors and financial institutions additional time in which to develop and implement written identity theft prevention programs." Press Release, FTC Will Grant Six-Month Delay of Enforcement of 'Red Flags' Rule Requiring Creditors and Financial Institutions to Have Identity Theft Prevention Programs (Oct. 22, 2008).

27. The FTC's October 22, 2008 press release further noted that the delay was motivated in part by confusion concerning the scope of the Final Red Flags Rule and the definition of "creditor," stating:

> [FTC] staff launched outreach efforts last year to explain the Rule to the many different types of entities that are covered by the Rule. . . . During the course of these efforts, [FTC] staff learned that some industries and entities within the FTC's jurisdiction were uncertain about their coverage under the Rule. These entities indicated that they were not aware that they were engaged in activities that would cause them to fall under the [FACTA's] definition of creditor or financial institution. Many entities also noted that, because they generally are not required to comply with FTC rules in other contexts, they had not followed or even been aware of the rulemaking, and therefore learned of the Rule's requirements too late to be able to come into compliance by November 1, 2008.

*Id.*

28. Also on October 22, 2008, the FTC published on its website a two-page document entitled "FTC Enforcement Policy: Identity Theft Red Flags Rule, 16 CFR 681.2" (the "Enforcement Policy").

29. Neither the October 22, 2008 press release nor the Enforcement Policy provided any indication that the FTC believed lawyers engaged in the practice of law fell within the definition of "creditor."

### The FTC's Unexpected Extended Enforcement Policy

30. On April 30, 2009, the FTC issued a press release informing the general public that it was extending the Red Flags Rule enforcement deadline until August 1, 2009. *See* Press Release, FTC Will Grant Three-Month Delay of Enforcement of 'Red Flags' Rule Requiring Creditors and Financial Institutions to Adopt Identity Theft Prevention Programs (Apr. 30, 2009).

31. In the press release, the FTC Chairman noted an "ongoing debate" concerning the scope of the FACTA. *Id.*

32. Also on April 30, 2009, the FTC published on its website a three-page document entitled "FTC Extended Enforcement Policy: Identity Theft Red Flags Rule, 16 CFR 681.1" (the "Extended Enforcement Policy").

33. In the Extended Enforcement Policy, the FTC announced publicly for the first time its belief that lawyers engaged in the practice of law are "creditor[s]" subject to the Final Red Flags Rule.

34. In a footnote to the Extended Enforcement Policy, the FTC explained the basis for its belief that lawyers engaged in the practice of law are "creditors" under the FACTA as follows:

> In FACTA, Congress imported the definition of creditor from the [ECOA] for purposes of the [FCRA]. This definition covers all entities that regularly permit deferred payments for goods or services. The definition thus has a broad scope and may include entities that have not in the past considered themselves to be creditors. *For example, creditors under the ECOA include professionals, such as lawyers or health care providers, who bill their clients after services are ren-*

11

>   *dered.* Similarly, a retailer or service provider that, on a regular basis, allows its customers to make purchases or obtain services and then bills them for payment at the end of each month would be a creditor under the ECOA.

*Id.* (emphasis added).

35.  The FTC's inclusion of "lawyers" in this footnote ignores the reality that, in order for a lawyer to fall within the ECOA's definition of "creditor," the lawyer must regularly extend, renew, or continue credit; or regularly arrange for the extension, renewal, or continuation of credit; or be any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.  15 U.S.C. § 1691a(e) (quoted in full in paragraph 17 above).

36.  A lawyer does not "regularly extend" credit merely by providing services to a client in advance of billing for those services.  In fact, state rules of professional conduct generally prohibit lawyers from receiving compensation before services are rendered.  Similarly, that a client may not timely or entirely pay its bill, and the lawyer or law firm may voluntarily choose to delay collection and to continue to perform work for that client, does not transform the lawyer or law firm into a "creditor" who "regularly extends credit."  The FTC is improperly attempting to sweep the entire legal profession within the ambit of the Red Flags Rule based on the way in which clients pay for legal services.

37.  Further, the FTC's attempt to regulate "lawyers" under the Red Flags Rule fails to recognize that Congress incorporated only the ECOA's definition of "creditor," but could not incorporate the ECOA's scope and purpose.  The ECOA prohibits discrimination with respect to any aspect of a credit transaction on the basis of race or other protected characteristics, because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.  15 U.S.C. § 1691(a).  Assuming that lawyers engaged in the practice of law are included within ECOA's definition of "creditors"—which the ABA does not concede—the ECOA applies to all

creditors, irrespective of whether those creditors' activities affect interstate commerce. Section 5 of the Fourteenth Amendment permits Congress to enact such anti-discriminatory legislation irrespective of the Tenth Amendment's limitations on federal power.

38. By contrast, the FACTA serves no anti-discriminatory purpose; it is a typical consumer protection statute. Congress's authority to enact the FACTA derived from the Commerce Clause, not the Fourteenth Amendment. The FACTA therefore is subject to the standard limitations on Congress's power to regulate interstate commerce, including the Tenth Amendment and the law of this circuit.

39. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." In *ABA v. FTC*, 430 F.3d 457 (D.C. Cir. 2005), the United States Court of Appeals for the District of Columbia Circuit concluded that "[i]t is undisputed that the regulation of the practice of law is traditionally the province of the [S]tates" and that federal law "may not be interpreted to reach into areas of State sovereignty unless the language of the federal law compels the intrusion." *Id.* at 471 (citing *City of Abilene v. FCC*, 164 F.3d 49, 52 (D.C. Cir. 1999)). The D.C. Circuit noted that "if Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" *Id.* at 471-72 (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989)).

40. The States have the power to regulate the practice of law absent a clear Congressional statement in the language of a statute indicating otherwise. No such intention was stated in the FACTA or, for that matter, in the ECOA.

41. Without a clear statement from Congress granting the FTC power to regulate lawyers engaged in the practice of law, the FTC has overstepped the constitutional limitations placed on its regulatory authority.

### The FTC's July 29, 2009 Last-Minute Delay

42. Three days before the Extended Enforcement Policy was scheduled to take effect, the FTC issued a press release informing the general public that it was delaying the Red Flags Rule enforcement deadline until November 1, 2009. *See* Press Release, FTC Announces Expanded Business Education Campaign on 'Red Flags' Rule (July 29, 2009) ("July 29 Press Release").

43. According to the July 29 Press Release, the three-month extension was "consistent with the House Appropriations Committee's recent request that the Commission defer enforcement in conjunction with additional efforts to minimize the burdens of the Rule on health care providers and small businesses with a low risk of identity theft problems."

44. The July 29 Press Release explained that many covered entities, particularly small businesses and entities with a low risk of identity theft, remained uncertain about their obligations. The FTC sought to ameliorate those concerns by citing an agency document entitled "The Red Flags Rule: Frequently Asked Questions" ("FAQs"). According to the FTC:

> The enforcement FAQ[s] state[] that Commission staff would be unlikely to recommend bringing a law enforcement action if entities know their customers or clients individually, or if they perform services in or around their customers' homes, or if they operate in sectors where identity theft is rare and they have not themselves been the target of identity theft.

July 29 Press Release. These FAQs, couched in vague and conditional language, have no legal or binding effect whatsoever, not even on the FTC or its staff. They are essentially meaningless, except as evidence that the FTC has not reconsidered its conclusion that lawyers are "creditors" under the FACTA.

14

45. The prosecutorial discretion exercised by FTC staff likewise does not bind state government agencies who are authorized to enforce the FACTA, *see* 15 U.S.C. § 1681s(c), nor will it preclude private parties from arguing that the FACTA and the Red Flags Rule should be interpreted as creating an implied right of action. *See* FAQs ¶ E.1 (asserting that under the FACTA, "there is no private right of action. Only certain federal and state government agencies can enforce the Rule, but consumers can file a complaint with the FTC about a company's Program") (footnote omitted).

46. As for the FAQs themselves, they confirm the FTC's previously stated position that lawyers engaged in the practice of law are "creditors" subject to the FACTA. *See* FAQs ¶ B.1.

47. The FAQs also explain what "creditor[s]" must do to comply with the FACTA even if there exists a low risk of identity theft, stating:

> **I'm a creditor with consumer or household accounts, but I think it's very unlikely that an identity thief will try to defraud me. Do I still have to prepare an Identity Theft Prevention Program?**
>
> The Red Flags Rule requires all creditors with covered accounts to prepare an Identity Theft Prevention Program ("Program"). At the same time, the Commission staff recognizes that your risk of identity theft may be so low that, as a matter of prosecutorial discretion, Commission staff would be unlikely to recommend bringing a law enforcement action under the following circumstances:
>
> - You know your clients individually. For example, some medical practices and law firms are familiar with everyone who walks into the office. In such circumstances, the likelihood that an identity thief can defraud a business by impersonating someone else is extremely low.
>
> - You provide services to customers in or around their home, such as by operating a lawn care or a home cleaning business. For these types of businesses, the risk of identity theft is extremely low because identity thieves generally do not want people to know where they live.
>
> - You are involved in a type of business where identity theft is rare. For example, if there are no reports in the news, trade press, or among people in your line of business about identity theft and your business itself has not

>    experienced incidents of identity theft, it is unlikely that identity thieves
>    are targeting your sector.
>
> Of course, from time to time you need to consider whether your identity theft risk
> has changed, warranting a different approach with respect to the Rule.

FAQs ¶ E.3.

48.　With respect to penalties, the FAQs explain that the FTC can "seek both monetary civil penalties and injunctive relief for violations of the Red Flags Rule. Where the complaint seeks civil penalties, the U.S. Department of Justice typically files the lawsuit in federal court, on behalf of the FTC. Currently, the law sets $3,500 as the maximum civil penalty per violation. Each instance in which the company has violated the Rule is a separate violation." FAQs ¶ E.4.

### The Requirements Imposed by the Extended Enforcement Policy Have Harmed and Will Continue to Harm the ABA's Members Irreparably

49.　The ABA's members are "adversely affected or aggrieved" within the meaning of 5 U.S.C. § 702 by the requirements set forth in the Red Flags Rule, as applied to lawyers by the Extended Enforcement Policy.

50.　Compliance with the Red Flags Rule imposes significant burdens upon lawyers, particularly sole practitioners and those practicing in small firms, who comprise the majority of the lawyers in the United States.

51.　Compliance with the Red Flags Rule in the first instance requires development of a plan to detect "red flags." This cannot be done on a "cookie-cutter" basis. A plan for a lawyer who handles consumer credit matters will be different from one who represents plaintiffs in personal injury cases or matrimonial matters. Once a plan is developed, it has to be implemented and maintained. "Red flags" must be detected and appropriate responses must be made. This is likely to create a substantial drain on the financial resources of lawyers, particularly those whose support systems are limited and already devoted to serving their clients. Correspondingly, the

time required to comply with the Red Flags Rule will necessarily detract from the attention lawyers are able to give their clients' matters.

52. The requirements imposed by the Red Flags Rule, as applied to lawyers by the Extended Enforcement Policy, are contrary to law. Included within the ABA's membership are a significant number of lawyers and law firms who will be required to comply with the Red Flags Rule absent timely judicial relief. Many of the ABA's members have already been forced to dedicate significant resources to prepare for this eventuality. Because of the Federal Government's sovereign immunity, the ABA's members will be unable to obtain money damages from the FTC in the event the application of the Red Flags Rule to lawyers is declared unlawful. As such, the financial injuries suffered by the ABA's members cannot be remedied at law and are irreparable.

53. The Red Flags Rule and the Extended Enforcement Policy constitute "final agency action" within the meaning of 5 U.S.C. § 704.

## CAUSES OF ACTION

### COUNT I:
### The Extended Enforcement Policy Violates the Clear Statement Doctrine

54. The ABA repeats and realleges paragraphs 1-53 as if set forth fully herein.

55. Pursuant to 5 U.S.C. § 706(2)(C), a reviewing court shall hold unlawful and set aside agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

56. By applying the Red Flags Rule to lawyers engaged in the practice of law, the FTC has exceeded its statutory mandate from Congress.

57. Specifically, by purporting to regulate lawyers engaged in the practice of law pursuant to the Extended Enforcement Policy, the FTC has intruded upon an area of traditional state

regulation. *See Leis v. Flynt*, 439 U.S. 438, 442 (1979) ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions."); *ABA v. FTC*, 430 F.3d 457, 471 (D.C. Cir. 2005) ("It is undisputed that the regulation of the practice of law is traditionally the province of the [S]tates.").

58.     In enacting the FACTA, Congress did not directly and plainly grant the FTC the authority to regulate practicing lawyers.

59.     The FTC therefore has taken agency action in excess of its statutory jurisdiction, authority, and limitations, and short of statutory right.

60.     The Court therefore should set aside the Extended Enforcement Policy to the extent the FTC purports to apply the Red Flags Rule to lawyers engaged in the practice of law, as well as any other application of the Red Flags Rule to lawyers engaged in the practice of law.

## COUNT II:
### Application of the Red Flags Rule to Lawyers Engaged in the Practice of Law Is Arbitrary, Capricious and Contrary to Law

61.     The ABA repeats and realleges paragraphs 1-53 as if set forth fully herein.

62.     Pursuant to 5 U.S.C. § 706(2)(A), a reviewing court shall hold unlawful and set aside agency action found to be "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law."

63.     The FTC has acted arbitrarily, capriciously and contrary to law by failing to articulate, among other things: a rational connection between the practice of law and identity theft; an explanation of how the manner in which lawyers bill their clients can be considered an extension of credit under the FACTA; or any legally supportable basis for application of the Red Flags Rule to lawyers engaged in the practice of law.

18

64. Because application of the Red Flags Rule to lawyers engaged in the practice of law is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law, it must be set aside.

## COUNT III:
### The ABA's Members Are Entitled To a Judgment Declaring Their Legal Rights and Duties Under the Red Flags Rule

65. The ABA repeats and realleges paragraphs 1-53 as if set forth fully herein.

66. As demonstrated by the foregoing allegations, there is an actual controversy of sufficient immediacy and concreteness relating to the legal rights and duties of the ABA's members and the proper legal relations between the ABA's members and the FTC to warrant relief under 28 U.S.C. § 2201.

67. The harm to the ABA's members as a direct and indirect result of the FTC's conduct is sufficiently real and imminent to warrant the issuance of a conclusive declaratory judgment clarifying the legal relations of the parties.

### REQUEST FOR RELIEF

WHEREFORE, the ABA respectfully requests that this Court:

A. Provide for expeditious proceedings in this action in light of the Extended Enforcement Policy's November 1, 2009 effective date;

B. Enter judgment in the ABA's favor;

C. Declare the application of the Red Flags Rule to lawyers engaged in the practice of law unlawful and void;

D. Permanently enjoin the FTC, its agents, servants, employees, successors and assigns from implementing the Red Flags Rule in any manner that includes lawyers engaged in the practice of law;

  E. Award the ABA its costs and reasonable attorneys' fees incurred in this action pursuant to 28 U.S.C. § 2412; and

  F. Grant the ABA such other relief as the Court deems just and proper.

Dated: August 27, 2009        Respectfully submitted,

                PROSKAUER ROSE LLP

                By: /s/ James F. Segroves
                   James F. Segroves (D.C. Bar No. 480360)
                   1001 Pennsylvania Avenue, NW
                   Suite 400 South
                   Washington, DC 20004-2533
                   202.416.6800
                   202.416.6899 (fax)
                   jsegroves@proskauer.com

                   Steven C. Krane[*]
                   Kristen J. Mathews[*]
                   David A. Lewis[*]
                   Rebecca L. Ambrose[*]
                   1585 Broadway
                   New York, NY 10036-8299
                   212.969.3000
                   212.969.2900 (fax)
                   skrane@proskauer.com
                   kmathews@proskauer.com
                   dlewis@proskauer.com
                   rambrose@proskauer.com

                   *Counsel for Plaintiff American Bar Association*

                   [*] *Motion for Admission Pro Hac Vice to Be Filed*

*Of Counsel*:

R. Thomas Howell, Jr.[*]
General Counsel
American Bar Association
321 N. Clark Street
Chicago, IL 60654
312.988.5215
312.988.5217 (fax)
thowell@staff.abanet.org