**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| AMERICAN BAR ASSOCIATION, )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>)<br>FEDERAL TRADE COMMISSION, )<br>)<br>*Defendant.* ) | Civil Action No. 09-1636 (RBW) |   |

**BRIEF *AMICUS CURIAE* OF THE
AMERICAN ASSOCIATION FOR JUSTICE IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

 

John Vail
D.C. Bar No. 461512
CENTER FOR CONSTITUTIONAL LITIGATION, P.C.
777 Sixth Street NW, Suite 520
Washington, DC 20001
Telephone: (202) 944-2887
Facsimile: (202) 965-0920
E-mail: john.vail@cclfirm.com
*Counsel for Amicus American Association for Justice*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

INTEREST OF AMICUS CURIAE .............................................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

ARGUMENT ................................................................................................................................ 2

    I.    THE FTC'S EXPANSIVE INTERPRETATION OF THE FACTA VIOLATES BOTH ELEMENTS OF THE "'DOUBLE SECURITY'" PROVIDED BY OUR CONSTITUTIONAL SYSTEM OF GOVERNMENT ................................................................................................... 3

        A.    The FTC's Expansive Interpretation of the FACTA Impermissibly Impinges on the States' Power to Regulate Attorneys Engaged in the Practice of Law ................................................................................... 5

        B.    The FTC's Expansive Interpretation of the FACTA Violates the Principle of the Separation of Powers As It Impermissibly Usurps the Power of the State Courts to Regulate Attorneys Engaged in the Practice of Law ................................................................................... 9

    II.    THIS COURT SHOULD NARROWLY CONSTRUE THE FACTA AND THE FTC'S INTERPRETATION OF AND GUIDELINES REGARDING THAT STATUTE TO AVOID REACHING THESE CONSTITUTIONAL ISSUES .......................................................................... 13

CONCLUSION ........................................................................................................................... 14

CERTIFICATE OF SERVICE .................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240 (1999) ................................................................ 4

*Ashwander v. TVA*, 297 U.S. 288, 56 S. Ct. 466 (1936) ............................................................. 13

*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S. Ct. 3142 (1985) .............................. 4

*Attorney General of Maryland v. Waldron*, 426 A.2d 929 (Md. 1981) ....................................... 12

*Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S. Ct. 2691 (1977) ...................................... 7, 13

*Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984) ............................................................................................................................ 2

*City of Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 122 S. Ct. 2226 (2002) ........................................................................................................................................ 9

*Deptartment of Revenue of Oregon v. ACF Industries, Inc.*, 510 U.S. 332, 114 S. Ct. 843 (1994) ........................................................................................................................................ 9

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983) .......... 8

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 108 S. Ct. 1392 (1988) ...................................................................... 3

*Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 124 S. Ct. 2301 (2004) ................... 13

*Ex parte Lockwood*, 154 U.S. 116, 14 S. Ct. 1082 (1894) ............................................................ 7

*Foster v. Hall*, 22 Am. Dec. 400, 29 (12 Pick) Mass. 89 (1831) ................................................. 10

*Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S. Ct. 2720 (1991) ..................................... 10

*Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S. Ct. 2004 (1975) .......................................... 7

*Gonzales v. Oregon*, 546 U.S. 243, 126 S. Ct. 904 (2006) ........................................................... 9

*Gregory v. Ashcroft*, 501 U.S. 452, 111 S. Ct. 2395 (1991) ................................................ 3, 4, 9

*Hoover v. Ronwin*, 466 U.S. 558, 104 S. Ct. 1989 (1984) ........................................................ 7, 8

*In re 42 Pa.C.S. § 1703*, 394 A.2d 444 (Pa. 1978) ..................................................................... 12

*In re Summers*, 325 U.S. 561, 65 S. Ct. 1307 (1945) ................................................................... 7

*Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 111 S. Ct. 1711 (1991) ........................ 8

*Leis v. Flynt*, 439 U.S. 438, 99 S. Ct. 698 (1979) .................................................................... 6, 7

*Marbury v. Madison*, 5 (1 Cranch) U.S. 137 (1803) ..................................................................... 12

*McConnell v. Federal Election Commission*, 540 U.S. 93, 124 S. Ct. 619 (2003) ...................... 13

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240 (1996) ....................................................... 6

*Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102
    S. Ct. 2515 (1982) .................................................................................................................. 7, 8

*New York State Bar Association v. F.T.C.*, 276 F. Supp. 2d 110 (D.D.C. 2003) ......................... 6, 7

*New York v. United States*, 505 U.S. 144, 112 S. Ct. 2408 (1992) .................................................. 5

*Nix v. Whiteside*, 475 U.S. 157, 106 S. Ct. 988 (1986) ................................................................. 10

*Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S. Ct. 1912 (1978) ................................ 8

*Printz v. United States*, 521 U.S. 898, 117 S. Ct. 2365 (1997) .................................................. 3, 4

*Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, 531
    U.S. 159, 121 S. Ct. 675 (2001) ......................................................................................... 2, 3, 13

*State ex rel. Fiedler v. Wisconsin Senate*, 454 N.W.2d 770 (Wis. 1990) ...................................... 12

*State v. McMillan*, 319 S.E.2d 1 (Ga. 1984) ................................................................................. 12

*Tafflin v. Levitt*, 493 U.S. 455, 110 S. Ct. 792 (1990) .................................................................... 4

*Texas v. White*, 74 U.S. 700 (1869) ................................................................................................ 5

*United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004) ...................... 13

*United States v. Adonis*, 744 F. Supp. 336 (D.D.C. 1990) .............................................................. 7

*United States v. Bass*, 404 U.S. 336, 92 S. Ct. 515 (1971) ............................................................. 3

*United States v. Lopez*, 765 F. Supp. 1433 (N.D. Cal. 1991) .......................................................... 7

*United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998) ........................................................... 7

*United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000) ................................................................... 7

*Washington State Bar Association v. State*, 890 P.2d 1047 (Wash. 1995) ................................... 12

*Washington State Grange v. Washington State Republican Party*, 128 S.Ct. 1184 (2008) ......... 13

*Wyeth v. Levine*, 129 S. Ct. 1187 (2009) ........................................................................................ 6

**Statutes**

15 U.S.C. §§ 1681-1681x .................................................................................................... 2

**Other Authorities**

Drinker, H., LEGAL ETHICS (1953) ...................................................................................... 10

Goff, John W., *The Lawyer*, 22 YALE L.J. 433 (1913) .................................................... 11

Hunter, Rebecca Wood, *Legal and Professional Ethics: Protection of Client Identity,* 55
    OKLA. L. REV. 297 (2002)........................................................................................ 10

THE FEDERALIST NO. 28 (Alexander Hamilton) (Clinton Rossiter ed., 1961)................... 3

THE FEDERALIST NO. 39 (James Madison) (Clinton Rossiter ed., 1961)........................ 4

THE FEDERALIST NO. 45 (James Madison) (Clinton Rossiter ed., 1961)........................ 5

THE FEDERALIST NO. 51 (James Madison) (Clinton Rossiter ed., 1961)........................ 3

Wigmore, John Henry, EVIDENCE (McNaughton rev. ed., 1961) ................................. 11

**Rules**

LCvR. 5.4................................................................................................................................ 11

## INTEREST OF AMICUS CURIAE

American Association for Justice (AAJ) is a voluntary, nation-wide association of trial lawyers who primarily represent plaintiffs in litigation involving personal injury, environmental protection, civil rights, occupational health and employment rights, consumer rights, and commercial law litigation. Of particular importance to this case, AAJ members have pioneered consumer protection litigation through state civil tort action and by testifying before Congress and state legislature about dangerous and deleterious conduct, practices, and products.

AAJ members have a direct and concrete interest in the outcome of this case. AAJ's members practice in every State and the District of Columbia and are subject to the Ethical Standards, Disciplinary Rules, and Codes of Professional Responsibility adopted in each jurisdiction in which they practice.

These Standards, Rules, and Codes were developed over decades with the assistance of the Bench and Bar and are informed by centuries of common law jurisprudence and are rigorously enforced. They fully and adequately protect the interests of lawyers, clients, and the public. Requiring lawyers to submit to a federal regime of regulation, as the Federal Trade Commission (FTC) presumes to do in its interpretation of the FACTA's "creditor" provisions, is burdensome and unnecessary. For the reasons detailed below, such federal regulation is unauthorized and unconstitutional.

## INTRODUCTION AND SUMMARY OF ARGUMENT

*Amicus Curiae*, AAJ, hereby adopts the statement of the facts, the description of the statutory and regulatory background, and the recitation of the procedural history of this case that are set forth in the ABA's "Memorandum of Points and Authorities in Support of Plaintiff's

Motion for Partial Summary Judgment." AAJ also agrees with and adopts the substantive arguments set forth therein.

AAJ respectfully submits, additionally, that the FTC's expansive interpretation of the FACTA violates both elements of the "'double security'" provided by our constitutional system of government. The agency's expansive interpretation of the FACTA impermissibly impinges upon the power of the States to regulate attorneys engaged in the practice of law, violates the principle of the separation of powers, and invades the province of the courts as it impermissibly usurps the power of the state courts to regulate attorneys engaged in the practice of law.

## **ARGUMENT**

This Court should grant partial summary to the ABA, on Count I of its Complaint, because Defendant FTC announced policy of applying its "Red Flags Rule" to attorneys engaged in the practice of law violates the United States Constitution and thus exceeds its statutory authority.

As an initial matter regarding the applicable standard of review, in addition to the reasons the ABA has advanced regarding why this Court should not accord "*Chevron* deference" to the FTC's expansive construction and application of its authority under the Fair and Accurate Credit Transactions Act of 2003 (FACTA), Pub. L. No. 108-159, 117 Stat. 1952 (codified at 15 U.S.C. §§ 1681-1681x) (pursuant to *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 104 S. Ct. 2778 (1984)), such deference is not due for an added and compelling reason: "the administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power" and thereby "raise[s] serious constitutional problems . . . . " *Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159, 173, 121 S. Ct. 675, 683 (2001) (citing *United States v. Bass*, 404 U.S. 336, 349, 92 S.

Ct. 515, 523 (1971)). Indeed, as explained below, in such circumstances, courts are admonished to apply the doctrine of constitutional avoidance and narrowly "construe the statute" in order "to avoid such problems unless such construction is *plainly contrary* to the intent of Congress." *Id.* (emphasis added; citing *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S. Ct. 1392, 1397 (1988)).

I.  **THE FTC'S EXPANSIVE INTERPRETATION OF THE FACTA VIOLATES BOTH ELEMENTS OF THE "'DOUBLE SECURITY'" PROVIDED BY OUR CONSTITUTIONAL SYSTEM OF GOVERNMENT**

We begin with a discussion of the most elementary principles of constitutional law.

> "In the compound republic of America, the power surrendered by the people is first divided between *two distinct governments*, and then the portion allotted to *each subdivided among distinct and separate departments*. Hence *a double security* arises to the rights of the people. The different governments will control each other, at the same time that each will be controlled by itself."

*Printz v. United States*, 521 U.S. 898, 922, 117 S. Ct. 2365, 2378 (1997) (emphasis added; quoting THE FEDERALIST NO. 51, at 323 (James Madison) (Clinton Rossiter ed., 1961)). *See also id.* (citing THE FEDERALIST NO. 28, at 180-81 (Alexander Hamilton) (Clinton Rossiter ed., 1961)). As shown below, the FTC's purported regulation of attorneys would violate both elements of the "'double security'" Madison mentioned: "the division of power between State and Federal Governments" and "the separation and equilibration of powers between the three branches" of government in each State and of "the Federal Government itself." *Id.* Indeed, "[i]t is incontestable that the Constitution established a system of 'dual sovereignty.'" *Id.*, 521 U.S. at 918, 117 S. Ct. at 2374 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457, 111 S. Ct. 2395, 2399 (1991)). The Founders stressed that while the States surrendered many of their traditional powers to the new Federal Government, the States carefully chose to "retain[ed] 'a residuary and

3

inviolable sovereignty.'" *Id.*, 521 U.S. at 918-19, 117 S. Ct. at 2375-76 (quoting THE FEDERALIST NO. 39, at 245 (James Madison) (Clinton Rossiter ed., 1961)).

In order "to ensure the protection of our fundamental liberties," *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S. Ct. 3142, 3150 (1985) (internal quotation marks omitted), the "Constitution establishes a system of dual sovereignty between the States and the Federal Government." *Gregory*, 501 U.S. at 457, 111 S. Ct. at 2400. The Framers adopted this "'constitutionally mandated balance of power,'" *Atascadero*, 473 U.S. at 242, 105 S. Ct. at 3150, to "reduce the risk of tyranny and abuse from either front," because a "federalist structure of joint sovereigns preserves to the people numerous advantages," such as "a decentralized government that will be more sensitive to the diverse needs of a heterogeneous society" and "increase[d] opportunity for citizen involvement in democratic processes," *Gregory*, 501 U.S. at 458, 111 S. Ct. at 2401.

Under our federal system, "the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458, 110 S. Ct. 792, 795 (1990). In this way, although the Supremacy Clause gives the Federal Government "a decided advantage in [a] delicate balance" between federal and state sovereigns, *Gregory*, 501 U.S. at 460, 111 S. Ct. at 2403, the States retain substantial sovereign authority.[1]

Hence, in keeping with the text and structure of the Constitution, "[t]he powers delegated by the proposed constitution to the federal government, are few and defined" and "[t]hose which

---

[1] *See* U.S. CONST. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people"). *See generally Alden v. Maine*, 527 U.S. 706, 714, 119 S. Ct. 2240, 2247 (1999); *Printz*, 521 U.S. at 919; 117 S. Ct. at 2377; *New York v. United States*, 505 U.S. at 155, 112 S. Ct. at 2417; *Gregory*, 501 U.S. at 457-58, 111 S. Ct. at 2399-2400.

4

are to remain in the state governments, are numerous and indefinite." THE FEDERALIST NO. 45, at 292-93 (James Madison) (Clinton Rossiter ed., 1961). Indeed, in protecting our constitutional government, "'the preservation of the States, and the maintenance of their governments, are as much within the design and care of the Constitution as the preservation of the Union and the maintenance of the National government.'" *New York v. United States*, 505 U.S. 144, 162, 112 S. Ct. 2408, 2421 (1992)  (quoting *Texas v. White*, 74 U.S. 700, 725 (1869)).

The FTC's interpretation of the FACTA as granting itself authority to regulate the attorneys engaged in the practice of law violates both of the crucial elements of the "double security" created by our constitutional scheme of government.

> **A.   The FTC's Expansive Interpretation of the FACTA Impermissibly Impinges on the States' Power to Regulate Attorneys Engaged in the Practice of Law**

It is very significant that Congress has never expressly sought to regulate attorneys engaged in the private practice of law, and equally significant that the Supreme Court repeatedly has cautioned that courts should be extremely reluctant to infer that Congress intended to do so. Thus, as the Supreme Court explained earlier this year, courts assessing arguably preemptive Congressional enactments or administrative regulations

> must be guided by two cornerstones of our preemption jurisprudence. First, "the purpose of Congress is the ultimate touchstone in every preemption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250 [(1996)] (internal quotation marks omitted); *see Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S. Ct. 219, 222 (1963). Second, "[i]n all preemption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Medtronic, Inc.*, 518 U.S. at 485, 116 S. Ct. at 2250 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

5

*Wyeth v. Levine*, 129 S. Ct. 1187, 1194-95 (2009) (emphasis added; internal citations omitted). The Court's emphasis on the presumption against preemption of traditional state powers arises from the Constitution's fundamental "respect for the States as 'independent sovereigns in our federal system' . . . . " *Id.*, 129 S.Ct. at 1195 n.3 (quoting *Medtronic, Inc.*, 518 U.S. at 485, 116 S. Ct. at 2250).

There are few if any areas of government in which the States have exercised their sovereignty longer and more exclusively than the regulation of attorneys. As this Court previously held (in determining the FTC lacked the implied power to regulate attorneys as "financial institutions"), "[s]ince he founding of the Republic,"

> the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions. The States prescribe the qualifications for admission to practice and the standards of professional conduct. They also are responsible for the discipline of lawyers.

*N.Y. State Bar Ass'n v. F.T.C.*, 276 F. Supp. 2d 110, 128 (D.D.C. 2003) (quoting *Leis v. Flynt*, 439 U.S. 438, 442, 99 S. Ct. 698, 701 (1979) (per curiam)).

The Supreme Court consistently has held that decisions regarding attorney conduct should be left solely to the jurisdiction of the courts in which the attorney practices. Thus, more than a century ago, the Court observed:

> [T]he right to control and regulate the granting of license to practice law in the courts of a state is one of those powers that was not transferred for its protection to the federal government, and its exercise is in no manner governed or controlled by citizenship of the United States in the party seeking such license.

*Ex parte Lockwood*, 154 U.S. 116, 117, 14 S. Ct. 1082, 1083 (1894).[2] Furthermore, not only do federal rules and ethical standards have no role to play in state courts, it is beyond dispute that state ethical rules and disciplinary codes apply to federal attorneys practicing in state courts.[3]

Significantly, the States' "'licensing and regulation of lawyers'" is more than just a traditional exercise of the States' powers. *N.Y. State Bar Ass'n*, 276 F. Supp. 2d at 129 (quoting *Leis*, 439 U.S. at 442, 99 S. Ct. at 700). Rather, as the Supreme Court stressed in *Hoover v. Ronwin*, 466 U.S. 558, 104 S. Ct. 1989 (1984), "'the regulation of the activities of the bar is at the core of the State's power to protect the public.'" 466 U.S. at 569 n.18, 104 S. Ct. at 1996 n.18 (quoting *Bates v. State Bar of Ariz.*, 433 U.S. 350, 361, 97 S. Ct. 2691, 2697 (1977)). Likewise, in *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S. Ct. 2004 (1975), the Court stated: "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Id.*, 421 U.S. at 792, 95 S. Ct. at 2016. In fact, "[t]he ultimate objective of [state]

---

[2] *See In re Summers*, 325 U.S. 561, 570-71, 65 S. Ct. 1307, 1312-13 (1945) (holding that the Illinois Supreme Court had the right to determine what rules would govern the conduct of the attorney's admitted to practice in its court); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434, 102 S. Ct. 2515, 2522 (1982) ("The State of New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses. States traditionally have exercised extensive control over the professional conduct of attorneys.").

[3] Although the U.S. Department of Justice once asserted authority to supersede state professional responsibility rules in regulating the practices of federal prosecutors, the "federal courts have unanimously rejected the notion that federal prosecutors are exempt from these ethical rules." *United States v. Singleton*, 144 F.3d 1343, 1354 (10th Cir. 1998), *reh'g en banc*, 165 F.3d 1297 (10th Cir. 1999). As one court noted, "as the nation's litigator, the Department and its attorneys must be held accountable to the same court-adopted ethical rules that govern all other lawyers." *United States v. Lopez*, 765 F. Supp. 1433, 1450 (N.D. Cal. 1991), *vacated on other grounds*, 4 F.3d 1455 (9th Cir. 1993). *See also United States v. Talao*, 222 F.3d 1133, 1139-40 (9th Cir. 2000); *United States v. Adonis*, 744 F. Supp. 336, 347 n.50 (D.D.C. 1990) ("Whatever may be the effect of the Constitution's Supremacy Clause with respect to local disciplinary bodies . . . that Clause obviously does not establish a memorandum issued by the Attorney General as supreme over rules issued by a federal court.").

control [of attorneys' professional] conduct is the protection of the public, the purification of the bar and the prevention of a re-occurrence." *Middlesex County*, 457 U.S. at 434, 102 S. Ct. at 2522.

For these reasons, "[f]ew other professions are as close to 'the core of the State's power to protect the public.' Nor is any trade or other profession as 'essential to the primary governmental function of administering justice.'" *Hoover*, 466 U.S. at 569 n. 18, 104 S. Ct. at 1996 n. 18 (citations omitted). *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16, 103 S. Ct. 1303, 1316 n.16 (1983).

The States' interests in regulating the bar are not a mere anachronism or a parochial device to prevent competition from lawyers outside a State's borders. To the contrary, the Supreme Court has acknowledged the States have legitimate and substantial interests in regulating attorneys, explaining "the State bears a special responsibility for maintaining standards among members of the licensed professions" as part of "*its general interest in protecting consumers* and regulating commercial transactions . . . . " *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460, 98 S. Ct. 1912, 1920 (1978) (emphasis added). Similarly, respect for state law is not merely an abstract preference. The Supreme Court's deference to state law "is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 98, 111 S. Ct. 1711, 1717 (1991) (citations omitted)).

Finally, the possibility that the FTC's novel policy may only impinge upon, rather than completely displace or supersede historic State regimes provides no defense against the nearly insuperable presumption against the preemption of long-standing and exclusive State schemes.

Thus, the Supreme Court has emphasized that "[w]hen determining the breadth of a federal statute that" not only "pre-empts" but merely "*impinges* on the States' traditional powers, we are hesitant to extend the statute beyond its evident scope" and "will interpret a statute to pre-empt the traditional state powers only if that result is "the clear and manifest purpose of Congress." *Dept. of Revenue of Or. v. ACF Industries, Inc.*, 510 U.S. 332, 345, 114 S. Ct. 843, 851 (1994) (emphasis added; citation omitted). For these reasons, the Supreme Court has recognized that federal statutes ordinarily will not be interpreted as displacing or interfering with state authority over professions such as law or medicine, absent an unambiguous statement of congressional intent.[4] And it is beyond dispute that Congress did not manifest such unambiguous intent in the FACTA.

### B. The FTC's Expansive Interpretation of the FACTA Violates the Principle of the Separation of Powers As It Impermissibly Usurps the Power of the State Courts to Regulate Attorneys Engaged in the Practice of Law

The general presumption against preemption is particularly strong where, as here, a federal administrative agency like the FTC asserts an implied power that not only interferes with a governmental function that historically and, in fact, invariably has been exercised by the States, but impinges on a governmental function traditionally, regularly, and exclusively exercised by an independent branch of State governments: the judiciary.

---

[4] *See Gonzales v. Oregon*, 546 U.S. 243, 275, 126 S. Ct. 904, 925 (2006) ("The Government . . . maintains that the prescription requirement delegates to a single executive officer the power to effect a radical shift of authority from the States to the Federal Government to define general standards of medical practice in every locality. The text and structure of the CSA show that Congress did not have this far-reaching intent to alter the federal-state balance . . . ."). *See also City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424, 449 n.4, 122 S. Ct. 2226, 2241 n.4 (2002) (Scalia, J., joined by O'Connor, J., dissenting) (even mere "federal *interference* with the 'historic powers of the States' must be evinced by a 'plain statement.'") (emphasis added; quoting *Gregory*, 501 U.S. at 461, 111 S. Ct. at 2404).

On the one hand, the federal courts "ha[ve] no constitutional authority to establish rules of ethical conduct for lawyers practicing in state courts." *Nix v. Whiteside*, 475 U.S. 157, 176, 106 S. Ct. 988, 999 (1986) (Brennan, J., concurring). Nor do the federal courts "enjoy *any* statutory grant of jurisdiction over legal ethics." *Id.* (emphasis added). On the other hand, the state courts "have historically regulated admission to the practice of law before them and exercised the authority to discipline and ultimately to disbar lawyers whose conduct departed from prescribed standards." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1066, 111 S. Ct. 2720, 2740 (1991).

State court regulation of attorneys, which dates back to the nineteenth century,[5] traditionally has included disciplinary rules designed to ensure that lawyers do not compromise the identity, or confidentiality of their clients. As Lemuel Shaw, Chief Justice of the Massachusetts Supreme Judicial Court and one of the great common law jurists of the post-Revolutionary era, explained, the "rule of privilege" protecting client confidences and communications "is not strictly confined to communications made for the purpose of enabling an attorney to conduct a cause in court, but does extend so as to include communications made by one to his legal adviser, whilst engaged and employed in that character . . . ." *Foster v. Hall*, 22 Am. Dec. 400, 29 (12 Pick) Mass. 89, 99 (1831) (citing cases).

> The appearance of the attorney-client privilege dates back to the reign of Elizabeth I, where it appeared as an unquestioned privilege . . . . While the privilege did not extend to the client, the attorney could claim the privilege every time he was asked information concerning his client.

Rebecca Wood Hunter, *Legal and Professional Ethics: Protection of Client Identity,* 55 OKLA. L. REV. 297, 298 (2002) (footnotes omitted). *See* 8 John Henry Wigmore, EVIDENCE § 2290, at 543

---

[5] "[T]he first official code of legal ethics [was] promulgated in this country" in 1887, *Gentile*, 501 U.S. at 1066, 111 S. Ct. at 2740 (citing H. Drinker, LEGAL ETHICS 23, 356 (1953)).

10

(McNaughton rev. ed., 1961); John W. Goff, *The Lawyer*, 22 YALE L.J. 433, 452 (1913) ("The law protects a lawyer from disclosing the secrets of his confidential relations with clients.").

Tellingly, the local rules of many state and federal courts expressly provide, as the Local Rules for this Court do, safeguards for the protection of individual person's identity and privacy. Thus, Rule 5.4 of the Rules of the United States District Court for the District of Columbia specifies, in pertinent part:

> (f)  PRIVACY REQUIREMENTS – *The following personal identifiers shall be excluded, or redacted where inclusion is necessary*, from all electronically filed documents unless otherwise ordered by the Court.
>
> (1) Social Security numbers. If an individual's Social Security number must be included in a pleading, only the last four digits of that number should be used.
>
> (2) Names of minor children. If the involvement of a minor child must be mentioned, only the initials of that child should be used.
>
> (3) Dates of birth. If an individual's date of birth must be included in a pleading, only the year should be used.
>
> (4) Financial account numbers. If a financial account number is relevant, only the last four digits should be used.[6]

LCvR. 5.4 (emphasis added).

Because the federal courts have no authority to regulate the practice of law (and because, with the kind of rare exception typified by this case and *New York State Bar Association v.*

---

[6] In the same vein, some courts have promulgated their own rules regarding protecting the identity and privacy of an attorney's clients. *See, e.g.*, Local Rules for the U.S. District Court for the Eastern District of Texas, Local Rule CV-5.2 of Privacy Protections For Filings Made with the Court. Other courts have adopted government-wide privacy policies. *See, e.g.*, Circuit Court Local Rules of Court for the City Newport News, Virginia, adopting the City's comprehensive "Privacy Policy," which details practices and procedures regarding, *inter alia* "Use, collection and retention of visitor information"; "Use of cookies"; "Personal Information"; "Public Disclosure"; and "Ensuring Confidentiality."

11

*F.T.C.*, federal agencies have only infrequently asserted authority to regulate legal practice), federal courts rarely have had reason to consider whether an act of Congress or a federal administrative rule, regulation, or policy violates the separation of powers doctrine. *But see Marbury v. Madison*, 5 (1 Cranch) U.S. 137 (1803) (holding that a federal statute that expanded the Supreme Court's jurisdiction beyond the limits set by the Constitution exceeded the powers granted to Congress by the Constitution).

Yet, state courts often have had occasion to assess state legislative attempts to regulate the practice of law and these courts have consistently and emphatically held that such attempts violate state constitutional guarantees of the separation of powers. Thus, "while the [state] legislature may prescribe minimum standards for the eligibility of persons desiring to practice law, *it is the province of the judiciary* ultimately to decide the fitness of those who practice before it and *to regulate their activities following their admission to practice*" *State ex rel. Fiedler v. Wis. Senate*, 454 N.W.2d 770, 772 (Wis. 1990) (emphasis added). *See also Wash. State Bar Ass'n v. State*, 890 P.2d 1047, 1051 (Wash. 1995); *Attorney Gen. of Md. v. Waldron*, 426 A.2d 929, 932 (Md. 1981); *State v. McMillan*, 319 S.E.2d 1, 10 (Ga. 1984); *In re 42 Pa.C.S. § 1703*, 394 A.2d 444, 449 (Pa. 1978).

For the foregoing reasons, this Court should hold the FTC's expansive interpretation of the FACTA exceeds the FTC's delegated powers under the Commerce Clause as that interpretation both impermissibly impinges upon the power of the States to regulate attorneys engaged in the practice of law and violates the separation of powers doctrine, as the FTC's action invades the province of the courts and impermissibly usurps the power of the state courts to regulate attorneys engaged in the practice of law.

## II. THIS COURT SHOULD NARROWLY CONSTRUE THE FACTA AND THE FTC'S INTERPRETATION OF AND GUIDELINES REGARDING THAT STATUTE TO AVOID REACHING THESE CONSTITUTIONAL ISSUES

As noted above, the Supreme Court has advised lower courts to narrowly "construe the statute" in order to avoid reaching constitutional questions unnecessarily. *Solid Waste Agency of N. Cook County*, 531 U.S. at 173, 121 S. Ct. at 683. Thus, federal courts consistently "abide by 'a series of rules under which [they] avoid passing upon a large part of all the constitutional questions pressed upon [them] for decision.'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S. Ct. 2301, 2308 (2004) (quoting *Ashwander v. TVA*, 297 U.S. 288, 346, 56 S. Ct. 466, 482 (1936) (Brandeis, J., concurring)). Indeed, "'[w]hen the validity of an act of the Congress is drawn in question, . . . it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 180, 124 S. Ct. 619, 681 (2003) (citation omitted). *See Wash. State Grange v. Wash. State Republican Part*y, 128 S.Ct. 1184, 1191 (2008). As a result, the Court of Appeals "regularly attempt[s] to avoid constitutional questions by resting decision on a statutory basis" wherever possible. *U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) (citing *Ashwander*). Hence, even assuming arguendo that the FTC's pre-emptive policy is susceptible of more than one plausible reading, courts ordinarily "accept the reading that disfavors preemption." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S. Ct. 1788, 1801 (2005).

This Court should follow the lead of the Supreme Court and the Court of Appeals and thus narrowly construe both the FACTA and the FTC's expansive interpretation of its powers under that act in order to avoid nettlesome constitutional questions.

## **CONCLUSION**

For the foregoing reasons, *amicus curiae* the American Association for Justice urges this Court to grant the Plaintiff ABA's Motion for Partial Summary Judgment.

Date: October 6, 2009                                 Respectfully submitted,


                                                      /s/John Vail
                                                      John Vail, D.C. Bar No. 461512
                                                      CENTER FOR CONSTITUTIONAL LITIGATION, P.C.
                                                      777 6th Street, N.W., Suite 520
                                                      Washington, D.C. 20001
                                                      Phone: (202) 944-2887
                                                      Fax: (202) 965-0920
                                                      *Counsel for Amicus American Association
                                                      for Justice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of October, 2009, that a true and correct copy of the foregoing Brief Amicus Curiae of the American Association for Justice in Support of Plaintiff's Motion for Partial Summary Judgment was served by Federal Express Standard Overnight delivery to the following counsel of record:

Steven C. Krane*
Kristen J. Mathews*
David A. Lewis*
Rebecca L. Ambrose*
1585 Broadway
New York, NY 10036-8299
*Counsel for Plaintiff American Bar Association*

James F. Segroves
D.C. Bar No. 480630
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C. 20004-2533
*Counsel for Plaintiff American Bar Association*

R. Thomas Howell, Jr.*
General Counsel
Patricia J. Larson*
Deputy General Counsel
AMERICAN BAR ASSOCIATION
321 N. Clark Street
Chicago, IL 60654
*Counsel for Plaintiff American Bar Association*

John F. Daly
Michael d. Bergman
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580-0001
*Counsel for Defendant Federal Trade Commission*

* Admitted *Pro Hac Vice*

                                        /s/John Vail
                                        John Vail, D.C. Bar No. 461512
                                        *Counsel for Amicus American Association*
                                        *for Justice*